DISTRICT COURT.                    DECEMBER 9, 1858.

CRIMINAL LAW.

## THE UNITED STATES v. BRICKER.

When the purpose and act are otherwise guilty within the statute, the similitude suffices to justify conviction if, according to the mode of use apparently designed, the counterfeit piece would have had a probable tendency to mislead persons whom it might be intended, in *this manner,* to defraud into a belief of its genuineness.

INDICTMENT for uttering and passing, as true, counterfeited coin in the resemblance or similitude of gold dollars.

## STATEMENT OF THE CASE.

On the trial, before CADWALADER, J., it appeared that there had recently been manufactured gilt pieces of metal, of less weight than gold, of the size and form of gold dollars, bearing on the side called the head, a somewhat rude, but otherwise complete resemblance to the genuine gold dollar. On the reverse side, the inscription "United States of America," and words "one dollar" were omitted; but there was a wreath resembling that upon the coins issued from the mint. In some cases, loops like eyes of shirt studs, or vest buttons were in the centre of this reverse side. In other cases the disks were in pairs attached in the manner of sleeve buttons, the two heads outside. The wires connecting them when thus in pairs, and the eyes of the single pieces were very easily broken off. An imperfection at the centre of the reverse side was then apparent. When the eyes or connections were thus detached, those who dealt in them called them "pocket pieces." When connected in pairs, they were sometimes called "sleeve-buttons." The single pieces, when with eyes, were sometimes called "studs," or "buttons." Two persons who dealt in them, each concerned in business in the same store, were examined as witnesses; neither could state where, how, or by whom these articles were manufactured. These dealers bought them by the dozen, at

prices exceeding those of gilt buttons of the same size of other patterns. The same persons resold them usually without eyes, by single pieces, in pairs, or in lots of half a dozen, at prices varying from two, three, or four, to ten times the price of the ordinary gilt button. The only receptacle from which they were sold in the store of these witnesses was a box, labelled "pocket pieces." The defendant purchased some without eyes at their store on two occasions, if not oftener.

These pieces, if so presented as to exhibit the head, and elude an examination of the other side, represented the genuine dollar sufficiently to mislead persons not particularly skilled in the detection of counterfeit coin into a belief that they were genuine. It appears that the defendant, in the evening of the 28th of October last, passed a piece of this description on a tavern-keeper by laying it with its head upward on the bar, in payment for a drink, and received the change. For this he was arrested; but on the 29th of October, on a hearing before the commissioner, was discharged. About the middle of November last, he, in a similar manner passed one, and attempted to pass another such piece at two taverns in succession, on the same evening. He was arrested and searched, when two or three other such pieces, with a small amount of good money, were found upon his person.

For the defence, the principal reliance was upon the doctrine laid down in The United States v. Morrow, 4 Wash. C. C. R. 733, where the charge was that of "attempting to pass" a counterfeit which was a "miserable imitation of the genuine" coin, and Judge Washington said that "the jury, before they" could "convict the prisoner ought to be satisfied that the resemblance" to the genuine was "sufficiently strong to deceive persons exercising ordinary caution." This, the counsel of the defendant contended, was the statement of a rule which, when applied to the pieces in question in the present case, entitled the defendant to an acquittal.

On the part of the United States, it was answered that in the case cited no general rule as to the resemblance to the genuine coin required by the Act of Congress was laid down. The

piece in that case had not been *passed* upon the prosecutor. The question was whether there had been a guilty *attempt* to pass it. The alleged attempt had been made by the defendant, not in person, but through the alleged agency of a young child. He was not present when the child made the attempt. The guilty intention in the employment of such an agent was negatived, not in *law* but in *fact,* if the counterfeit was not such as to deceive persons exercising ordinary caution. Judge Washington, after, in effect, saying so, and saying that the piece, as it *seemed to the court,* was in all respects a miserable imitation, added, "But the jury must judge for themselves." The district attorney contended that the present case was altogether different in the specific facts proved, and depended upon an entirely different principle, as to which, he cited authorities to show that no greater similitude than existed in this case was required if the guilty intent was proved, of which the facts here, as he insisted, precluded any doubt.

THE COURT, in charging the jury, said, "The similitude or resemblance" of the alleged counterfeit coin to the genuine required by the Act of Congress on which the prosecution is founded, need not be defined in general terms applicable to all cases. When the allegation is that a counterfeit so resembles, in all respects, the genuine coin as probably to have been intended for the indiscriminate deception of any person into whose hands it may find its way in the ordinary course of business, the similitude required in order to warrant an imputation of guilt ought, perhaps, to be such as might tend to deceive persons exercising ordinary caution, particularly if no artifice has been employed in order to throw a person receiving it off his guard. On this point, however, it is not necessary to express an opinion. Sometimes the allegation, as in the present case, may be that the similitude of the counterfeit coin to the genuine was purposely incomplete or imperfect, because its intended use for purposes of deception was confined to a peculiar class of transactions. Here it is alleged that the intended use of the piece was in transactions in which deception might be

practiced by an artful exhibition of only the head side. A counterfeit may so resemble the genuine coin on one side as to prevent a person seeing that side from using such vigilance as he might otherwise exercise in examining both sides. He may be thus thrown off his guard and misled by the appearance of the side of it exhibited into a belief of its genuineness. In such a case the counterfeiter may have purposely made or left the resemblance on the side which it is intended *not* to exhibit, incomplete or imperfect for the mere purpose of evading the proof of his guilty design, which would otherwise have been more manifest. For cases of this description, a specific definition of the similitude required by the statute may be given by stating as I do, that when the purpose and act are otherwise guilty within the statute, the similitude suffices if, according to the mode of use apparently designed, the piece would have had a probable tendency to mislead persons, whom it might be intended *in this manner* to defraud into a belief of its genuineness. The jury will consider this point of the similitude, first independently of the question whether the piece was actually passed or uttered with a guilty purpose. If they find that it had, according to this definition, the required similitude, they will next inquire whether it was passed, or uttered with a guilty purpose. On this latter point there is no dispute as to the law. It is left upon the testimony, to the jury, who will keep the two questions distinct, giving to the defendant the benefit of any reasonable doubt as to the facts."

The jury, after being out for some time, came into court, and asked the question: "Can a piece of metal be a counterfeit of the United States coin without the impression of the genuine coin, or the denomination?"

THE COURT answered: "If the question is as to the omission of a portion of the devices and legends required by the Act of Congress, such as an omission of the inscription 'United States of America,' or of the words 'one dollar,' I answer that such omission does not prevent the jury from lawfully finding a verdict of guilty, if they believe that the piece, first, had such a tendency to deceive as has been already defined in the charge

of the court; and secondly, was passed or altered with a guilty intent, as has also been explained in the charge." *

The jury retired, and soon afterwards returned with a verdict of guilty.

---

District Court.        December 17, 1858.
ADMIRALTY.

4. Therefore, the owners of a steam tow-boat and wrecker, so built and equipped for winter service, as to securely resist the impact and pressure of ice, may, in general, sue alone for, and recover the whole salvage compensation for such relief and assistance to other vessels as may be rendered by her in the regular course of her employment.

5. That such a steamer has not incurred any danger in rendering the service, and has performed it with ease, if her exemption from danger has been consequent upon her particular construction and equipment, and the ease of its performance has been due to the great power of her engine, will not ordinarily diminish the amount of salvage compensation to which her owners are entitled.

6. The criterion to determine whether the assistance rendered has been a salvage service, is, that it has afforded relief from actual or probable danger, distress, or extraordinary difficulty.

---

* See Biles *v.* Com., 32 Pa. St. R. 529, for the application of cognate principles to forgery under the common law.